The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We'll hear argument first in number 20-1401, AGIS Software Development, LLC v. Google LLC. Mr. Rubino. Good morning, Your Honors. This is Vincent Rubino for AGIS Software Development, LLC. May it please the court if I proceed? Yes. Good morning. This case is an appeal from a final written decision from the U.S. Patent Office. It centralizes around one term of a multi-term claim revolving around means plus function and obviousness of a means plus function term. The specific term that we have disputed in our appeals is the term means for receiving and displaying a listing of which recipient PDA cell phones have automatically acknowledged the forced message alert and which recipient PDA cell phones have not automatically acknowledged the forced message alert. This decision of obviousness is reviewed for substantial evidence, and there is simply no substantial evidence to support the obviousness determination by the board. More specifically, there is no evidence in the record that either of the references, Kubala or Hammond, disclose displaying anything, let alone the displaying required by this term. The petitioner in his petition did not use the word display. It did not describe displaying in the context of Kubala. Its expert did not describe displaying in the context of Kubala. The patent owner responded in its response with an expert declaration explaining how the references together do not teach or disclose displaying, and it is not obvious to have displaying from those references. The petitioner had full and fair opportunity to address that in its reply or reply declaration. Again, no use of the word display. It was only at the oral hearing when petitioner was asked about this term and the lack of this term that petitioner for the first time said that some other words in its declaration meant display. And those other words simply are not the word display. The final written decision by the board rendered in this case relies exclusively on that attorney argument, and Appelli, in its brief, cites to that specific argument as support, the only support, for the teaching of the term display. But I guess I'm a little bit confused. Doesn't Kubala itself disclose the accessibility of return receipts in the prior art and talk about that? I mean, isn't that the whole point is to know what was in the response emails? Your Honor, the word accessibility is what the petitioner here is relying on, what Google is relying on. However, there is nothing in the reference, nothing in the record, to support the proposition that that word means it's displayed. And it's not simply a question of whether it could be displayed, could an email be displayed. That's not the issue here. The issue is, for obviousness, we need to show that combination. Their expert needs to make that showing. There needs to have been evidence, substantial evidence, to show that it would have been displayed. So you're saying that the mere fact that they can be accessed when the whole purpose of the access is so that you know what's in the email doesn't include the logical displaying of those emails? Your Honor, we would posit that, on the one hand, it was petitioner's burden to show that if we're talking about something like inherency. And on the other hand, no, there's no requirement that it be displayed. How would you know what it was if it wasn't displayed? Your Honor, there are people who can read emails on their phones without having eyes. Emails could be, responses could be verbal, they could be sound based, it could be tactile, it could be vibrations. There are a whole host of things a phone could do, or an email application could do. And it's simply not inherent that any response is displayed, let alone that the acknowledgement is displayed. Isn't there an expert's declaration where the expert says that a skill in the art would understand that accessibility means that it has to be displayed? There is absolutely no evidence in the record of that. That is not the case. The petitioner's expert did not say that in his declaration. The paragraph about Kubala ends with the word accessible, does not go on further to say what accessible means. And in the petitioner's reply, where they put another expert declaration in, that is not before the panel today, that is not part of the appendix. There's nothing there either, and that's why Google didn't cite that. There's just no evidence in the record, no expert declaration, nothing explaining what accessible would mean, why it means display. And so here where we have to support the obviousness finding with substantial evidence, petitioner had to say something. They had to say something about that, about what accessible would have meant, and that it would have either had to mean displayed, or that display would have been obvious. But that's just not in the record. Okay, can I move you, before we run out of time, to this other contention that there's a taking control limitation here that wasn't satisfied by Kubala? And passing for the moment the question of whether the board changed its claim construction, when the board found that Kubala teaches taking control at pages 52 and 53, and why isn't that sufficient? Your Honor, with regard to whether that is sufficient, it simply was a case of, at that point in the proceeding, that point had not been developed by petitioner either. I don't think this issue is particularly before the panel, but that contention about whether Kubala teaches taking control, that was not a position that was advanced by petitioner in the petition below. And we would submit that, to the extent the board made a finding like that, it was not supported by substantial evidence either. It's just not sufficient to get beyond what was supposed to be in the petition. I'm sorry. Go ahead. I don't know, I can't understand from your briefing what exactly you think was wrong with the board's final construction. What we think was wrong with the board's final construction was that the word, was that take control was not part of the construction. And the reason why that's critical here is because in the, in figure four, there's a description of taking control of the device. That's of the device. And we tried to explain this at the oral hearing, why this is important. I believe those pages are cited in the record. There's a whole 16 or so pages of the record where we discussed this with the board. And taking control of the device is different from taking control of an email application. The critical difference between Kubala, the main difference. What does taking control mean to you? Well, taking control to me would mean something more than what an email application can do to your device. I mean, frankly, I wouldn't want an email application. But what do you think it means? Your Honor, it means it takes control of the device, meaning there has to be some limitation on the device itself, at the device level, not in a software application level. If one reads the specification in the context of, you know, what the 970 patent is about, what the patents it incorporates by reference are about, you know, my client, Agents of Software Development, LLC, and its sister company, they make military software for the government. If you lose your phone, it gets into enemy hands that someone can't take your phone and then get all the government information. That's just a different type of idea from an email application that might limit your ability to use that application. And it's in the claims because it says of the device. It doesn't say takes control of the software, which is the part of the... But the board provided a passage of the spec that doesn't even describe taking control, right? It relied on, what, column 8, lines 39 to 46? That is part of what the board relied on, but the board also relied on figure 4, which does include the taking control of the device. And then the separate step later of releasing control of the device. And the issue is that the board changed its construction. Well, the issue that we've raised on appeal is that the board changed that construction to read out that limitation improperly in its final written decision. And that that limitation was at least, to patent owners' knowledge, in the proceeding at that point. And, again, the reason why this limitation is important is because the Kubala reference does not say anything about taking control of a device. It is application-specific. It is an email application. And there's just nothing in the record, and it really would defy logic, that you would want your email application to take control of your phone, of your computer, of anything more than your email application itself. And there's nothing in Kubala at the system level that could explain how it could take control of a device. And to be clear, this is Judge Bryson. Just to be clear, you think that a system that enables the sender to prohibit the recipient from getting rid of the box, let's say, that has the various choices that are given to the recipient, is not taking control of the recipient's device? Your Honor, in the context of software, so if you have a software application with a box that comes up where you can't continue to use that software, but where you could move to a different portion of the software, or you could continue to use your Word application or some other applications on your device other than your email application, that's right. That would not be taking control of the device. It would have to be system level. But would it be taking control of the device if not only the box stayed put until you clicked one of the possible entries, but also you simply could not bring up any other function of the device? That would be fair, yes. That would be taking control. Okay. So that's the distinction you're drawing. Yes, Your Honor. All right. And the distinction we're drawing... Doesn't Kabula say exactly that according to the board at 52 and 53? Kabula's disclosure that the user must reply to the received email in some manner before the email application will allow the user to perform some other action? Our reading of that passage, and our reading even of the board's reading of that passage, is that the other action... There's nothing in the record to say the other action means on the device that is still application level. The board is still talking about the application-specific aspects in that passage, which are in the software application, in the email application. Okay. Mr. Rubino, do you have any rebuttal time? Do you want to save it? I would like to save my rebuttal time, yes, Your Honor. Thank you. Do my colleagues have any further questions? Hearing none. None. None? Okay. We'll hear from Mr. Garcia. Good morning, Your Honors, and may it please the Court. Both of AGIS's arguments in this appeal are meritless. I'll start with the displaying a listing limitation. I think counsel's argument today makes clear that their argument essentially reduces to the assertion that Google didn't use the word display in the relevant section of the petition and its expert declaration. And I just want to start by, if you look at the petition on page 134 of the appendix or the declaration on page 826, the relevant section begins with the header that quotes the displaying a listing limitation. The first sentence says, Kabbalah discloses the recited function, and Google then proceeds to provide the evidence to support that argument. So the suggestion that there was somehow surprise or ambiguity about what Google was arguing is absolutely baseless. And the Board relies on the same evidence that Google relied on. So the second strain of argument is just whether the evidence actually supports the Board's factual finding that it would be obvious to display a listing. And I think that evidence starts, as some of the questions suggested, with paragraph 6 of Kabbalah, which describes prior art return receipts, which the entire purpose of is to inform the sender, inform the user of what has happened with her message. Is it your argument that displaying is just inherent to user accessibility?  I think that the primary argument is that Kabbalah, in paragraph 6, describing the return receipts, is clearly discussing displaying. Again, the context here is that Kabbalah is a PDA display system, and it's discussing those return receipts. And in paragraph 36 and elsewhere, it describes the reply e-mails, which I'm a little surprised to hear a dispute today that the reply e-mails are displayed. That is just unambiguous from the reference, and at least a reasonable conclusion that the e-mails themselves are displayed. What's your response to the argument that it doesn't have to be displayed? Just because you want the information doesn't mean you have to be able to read it. So the direct answer to that, Your Honor, I think is that at this point, we have a factual finding from the Board that it would be obvious to display. And so the question is, if there's other ways to access, that wouldn't show that there's no substantial evidence for the fact that one way is to display it. And I do want to emphasize that AGES did not, contrary to the suggestion today, they submitted no contrary evidence about what a person of skill in the art would understand from Kabbalah. As the Board noted on page 57 of the decision, they erroneously said that Google didn't rely on Kabbalah at all. And as their expert admitted, that was just a mistake. So what the Board had was Google's argument and evidence that return receipts are known, that their entire purpose is to inform the sender her message was received, and that it is at the very least a reasonable inference from that evidence that those return receipts are displayed. Mr. Garcia, this is Judge Bryson. Supposing that there is a seriatim presentation of emails coming from the various recipients, each of which pops up on the recipient screen and then disappears or is erased, is that, in your view, does that satisfy the requirement that not just that there be a display of the receipts, but displaying a listing, which is the language of the claim limitations? And if so, how? So on the listing aspect, Your Honor, I think we have two general responses. Again, the seriatim presentation of emails, I think that that could be interpreted as a listing. But I think that the basis for the Board's finding is, number one, if you just look at Kabbalah, we have indisputably a disclosure of return receipts. And it was conceded below that you can have a listing that simply has a single entry. That's on page 1928 of the appendix from their expert. And their expert also conceded on page 52 of his deposition that it was known to display lists of information on a PDA. So I think all of that taken together, if you just look at Kabbalah, there is a listing. Go ahead. Yes. I just want to also briefly note that the listing aspect, if there's any doubt about Kabbalah and what I've just described, I think that's really where the Board's alternative holding about the combination of Kabbalah and Hammond has force. Table 2 in Hammond is clearly a listing of automatic acknowledgments and the alternative ruling on 58. Pardon me. That was the question I had about Hammond. Figure 2 is referred to as a message tracking table, which, if that is displayed, that would seem to me pretty clearly to cover the limitation. But what indication from Hammond do you have that that message tracking table is, in fact, displayed to the user, as opposed to simply being something that's going on within the program but not visible to the user? Is there anything in Hammond that indicates that? So in Hammond itself, Your Honor, I don't think, at least the basis for the Board's decision, is that there is something affirmative in Hammond that is displayed. That's why it's important that there's the combination with Kabbalah. And Kabbalah is a PDA display system, and this is the alternative ruling on pages 56 to 58 of the Board's opinion, which we've detailed on 35 and 36 of our brief, where the Board says, at a minimum, Hammond is tracking a listing of acknowledgment receipts, and Kabbalah discloses displaying information regarding the message, and together that discloses the displaying and listing requirement. So I think that's the most direct answer to this issue of listing and the Table 2 in Hammond. Our expert did put in evidence that a person of skill in the art would know to display portions of the table in Hammond, but I would readily admit that's not the basis of the Board's decision. The basis of the Board's decision is the combination, and it's striking that AGIS actually, in their briefs and today, has never addressed that combination, which is, again, to just put it concisely, is Hammond has the listing. Kabbalah indisputably discloses displaying some tracked information. That's the reply emails with response codes, and together it gets you to displaying a listing. There's absolutely substantial evidence for that conclusion. I think you said that your expert actually gave evidence that Hammond was displayed the listing. Is that right? Did I understand that correctly? That a person of skill in the art would know it would be obvious to display a table. Okay, but not that there was anything explicit in Hammond to that effect. That's correct, and that's why, yes, on Pages 57 and 58 of the Board's opinion, I think, track that rationale. Okay, that's fine. Thank you. I'm, of course, happy to address any other questions about Limitation 1.7, but given the discussion of Limitation 1.6, I do want to be clear about two essential points. First, we do agree with the Board's ruling on Pages 52 to 54 that Kabbalah discloses taking control, even if that is part of the construction, but that really is the Board's third alternative ruling, and there is no reason, in our view, for the Court to need to reach that. So, first, on Pages 49 to 51, the Board held that this argument, that the limitations should be construed to include taking control, was untimely. The fact of the matter is that AGIS, in no written submission, ever argued that the Board's construction included the taking control steps, or, I think more importantly, that the Prior Art failed to disclose the taking control steps. We collect all of those citations in our brief, and any suggestion to the contrary is simply false. Second, after holding that this argument was untimely, the Board rejected the claim construction argument on the merits, that's Pages 51 to 52, and AGIS didn't appeal that. And I think, to make that clear, I'll just direct the Court to the Statement of Issues. The Statement of Issues, in their brief, the only mention of 1.6, is in Issue 5. That issue is explicitly and exclusively about this alleged procedural violation, and as the Board held, there was no change in the construction, and AGIS never argued, never relied on these taking control steps. Do you interpret Judge Payne's construction as being in conflict with the Board's construction? I do, Your Honor. I think that, you know, Google opposed that construction in front of Judge Payne. I think we would still, of course, have arguments under that construction. But, going back to the point I was just making, our main response on that issue is that the merits of the construction are simply not before the Court. Their opening brief only references this alleged procedural violation, and we think that argument itself is completely meritless, and essentially the Board correctly held that all of these arguments relying on taking control were untimely. Go ahead, Judge Reich. Judge Payne's construction is not inconsistent with the Board's finding on 52 and 53 that Kabula satisfies even the narrower construction of what taking control means, right? That's correct, Your Honor. That's what I mean by the third alternative ruling. The Board says even if this construction is correct, the one that Judge Payne adopts and which AGIS has advocated below, Kabula still discloses that. One of the things that I want to point you to is that the Board found that Kabula teaches that the features of Figures 11A through D can be combined in different ways, but doesn't the language of the spec actually say that they can be used in different scenarios and not necessarily that their features can be mixed and matched? So, that is correct, Your Honor, that that's the language that's used in different scenarios. I think that we submitted expert testimony that it would be understood to combine those to require a response, and at a minimum, I would suggest when it says used in different scenarios as needed, that it is a reasonable interpretation the Board drew that they can be combined together. Okay. Do my colleagues have any other questions? No. No. Okay. Thank you, Mr. Garcia. Mr. Rubino, I think you have three minutes. Thank you, Your Honors. Vincent Rubino again for AGIS. One thing that was just raised, which I think is worth pointing out, is that Google's counsel just said that its expert address displays in the context of Hammond. Now, again, that's not necessarily before the panel here, because that was in the reply briefing put in by Google in their reply declaration, but it's still critical for the panel to understand that Google had the opportunity to say somewhere, to say something about what Kubala discloses and why that's a display. They had the opportunity in their petitioner reply. They had the opportunity in their petitioner reply declaration. They knew the point was at issue because patent owner's expert, Dr. Carbonell, said he didn't see an argument about display for Kubala. And whether petitioner wants to now say that the display argument was some portion of the other language they were relying on or that it was inherent, their chance to do that was in their petitioner reply and their petitioner reply declaration. They didn't do it anywhere. They said the word display in the context of Hammond in those papers, and counsel just admitted as much. But display was not discussed in the context of Kubala. It just was not in those sections for that limitation. And when it came to the hearing, that is why the panel asked counsel for Google about it. And that is why if we look at the final written decision, the only citation, the only citation to the record for that limitation is the citation to counsel's statement on the record. And it's a bit misleading in the briefing because it says that their expert actually made those statements. But if we look at the record on appeal at appendix 56, the record for the oral hearing appendix 56, it says petitioner's counsel explaining accessible means, accessible by the user, and the only way the user could access the information would be to view it. So that logic of displaying, that's only in this testimony provided by, that's not testimony, it's statements by counsel at the oral hearing. And that is exactly the type of supplementation of the record that, you know, the case that Google cites to, the Bungie case that they cite to in their brief, that's exactly the type of evidence that was precluded even in the case that they cite to, saying that attorney argument from briefing, which fails to cite underlying evidence, which is exactly what this is, that's insufficient to support a board's finding. And, Your Honor, unless there is a different question, I would yield the arrangement of time. Okay. Hearing no further questions, I thank both counsel. The case is submitted.